IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| STEVEN LEWIS BARNES, ) | Civil Action No. 4:05-02073-MBS-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| A. DELL DOBY, SHERIFF; LT. POLLY ) | |
| HALL; ELIJAH HARRIS; LT. KAREN ) | |
| JAGGERS; NURSE KATHY FLUERY; ) | |
| NURSE TERRY SHELTON; STAFF ) | |
| WADE ROUSE; WAYNE ADAMS; ) | |
| JOHN/JANE DOES OF THE FOOD ) | |
| DEPARTMENT AT AIKEN ) | |
| REGIONAL HOSPITAL; AND JOHN/ ) | |
| JANE DOES, STAFF AT EDGEFIELD ) | |
| COUNTY DETENTION CENTER, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Steven Lewis Barnes, filed this action under 42 U.S.C. § 1983[1] on July 28, 2005, alleging that his constitutional rights were violated due to medical indifference. On December 28, 2006, defendants Nurse Kathy Fluery and Nurse Terry Shelton (defendants and/or Nurse Kathy and Nurse Terry) filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with supporting memorandum, exhibits, and affidavits. (Doc. #112). Because the plaintiff is proceeding pro se, he was advised on or about December 29, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

dismissal of his complaint. Plaintiff filed a response in opposition on March 20, 2007. (Doc. #125).

## II. DISCUSSION

### A. ARGUMENT OF THE PARTIES

Plaintiff alleges medical indifference to his medical needs. Plaintiff specifically alleges that on June 23, 2005, after eating his meal, he became very sick with nausea and bad stomach cramps. Plaintiff alleges that he was sick for over 24 hours with extreme sweating, dehydration, a high fever and could barely stand up by noon on July 24, 2005. Plaintiff alleges that he attempted to make it to the bathroom in time but failed and soiled himself. Plaintiff alleges that he contacted staff Jonathan Wates that he needed to see a doctor immediately and was informed that he would call the nurse. After not hearing anything, plaintiff alleges that he was advised that the nurses do not work on the weekends and that neither nurse would answer their phones or pages. Plaintiff alleges that he was advised that neither nurse would come to work but that he was instructed to drink apple juice, plenty of fluids, get rest, and avoid eating dinner on that date.

Defendants assert that plaintiff was instructed as he alleges by an unidentified nurse to drink plenty of fluids, drink apple juice, get plenty of rest, and to avoid eating dinner on that date. Defendants contend that the detention official notified plaintiff if the problems persisted throughout the afternoon, he would receive a sick call slip. However, defendants argue there is no allegation the symptoms continued or resulted in damage to the plaintiff.

Defendants argue that "although convicted of ten felonies by a jury of his peers and sentenced to life plus 50 years, plaintiff claims he is a pretrial detainee for purposes of this lawsuit. Assuming *arguendo*, plaintiff is a pretrial detainee, his claims will be so analyzed." Therefore, the undersigned

will address this motion for summary judgment assuming plaintiff was a pretrial detainee.

### B. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S.

3

9 (1980) (per curiam).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam).  However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).  Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

### C.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on

4

the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### D. ANALYSIS

Defendants argue that the action against them should be dismissed as plaintiff has failed to show deliberate indifference of his medical needs on their part. Defendants assert there is no evidence plaintiff made any complaints to staff or to defendants Fluery or Shelton on the dates and times indicated in plaintiff's complaint. Defendants assert there is no evidence of any personal contact between plaintiff and defendants on June 23-24, 2005, and no evidence of that any telephone calls were received by defendants concerning plaintiff during the evening hours of June 23, 2005, or at all on June 24, 2005. Furthermore, defendants assert that there is no documentation of plaintiff requesting medical treatment or services on June 23-24, 2005, and that when plaintiff did request medical attention relating to potential good-borne illness issues, the medical staff timely responded

5

as noted in the August 2005 documentation. Defendants contend that even assuming plaintiff established he suffered from a serious medical condition, he fails to show the defendants were deliberately indifferent to that medical condition. Defendants argue that even if plaintiff did experience an injury, the injury was *de minimis*. Defendants state that "plaintiff has never been diagnosed as suffering from any food-borne illness by a medical provider. Since plaintiff has not suffered from his alleged ailment as documented in the medical records, the claims of injuries are meritless." (Defendants' memorandum p. 7).

Plaintiff filed a response in opposition basically restating the facts in his complaint. Plaintiff refers to several declarations that he submitted from other inmates but as can be seen from his own response in opposition, these other inmates gave no information concerning plaintiff's allegations against these defendants in June 2005. They basically allege how they feel their own constitutional rights have been violated due to medial indifference and/or conditions of confinement.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one

7

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff

were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendants for medical indiffference. As set out above, plaintiff alleges that he experienced nausea and stomach cramps after eating his meal and experienced symptoms of dehydration including sweating and diarrhea until the next morning. On June 24, 2005, plaintiff alleges he soiled his clothes due to an inability to timely reach the toilet and, while on the toilet, notified the ECDC officials that he needed to see a doctor immediately. Plaintiff alleges he was advised that the nurses did not work on the weekends and were not answering their pages nor phones. Plaintiff asserts he was advised about one hour later that the nurses would not be coming to work that day but then alleges that an unidentified nurse provided instructions to care for plaintiff's complaints with plenty of liquids, apple juice, plenty of rest, and to avoid eating dinner on that date. The detention officials notified plaintiff if he had anymore problems he would receive a slip call slip. There were no allegations that the symptoms continued

or resulted in damage to the plaintiff.

Defendants submitted the medical records of plaintiff along with their affidavits. Nurse Fluery attests that in June 2005, she was employed as a nurse with Southeastern Services Group, Inc. which provides health care services to the inmates at ECDC. Fluery attests that she reviewed plaintiff's medical records while incarcerated at ECDC. Fluery attests that while she worked with Southeastern, she worked at the ECDC part-time only up to twenty (20) hours per week but was on call 24 hours a day, 7 days a week and often received telephone calls from facility officers or staff who would advise her of an inmate's condition and answer her questions regarding the complaints if she was physically present at the ECDC. Fluery attests that if she determined on her nursing judgment that the situation was emergent she would advise the officer to have the inmate transferred to the local emergency room or she or Terry Shelton would travel to the facility to evaluate the inmate. However, Fluery attests that if she decided the situation was non-emergent, she would provide the officer with instructions to care for the inmate. Fluery avers that she performed a medical history and assessment of plaintiff to the extent he would participate on June 4, 2005. Fluery states that during the assessment plaintiff informed her he had a history of constipation. Fluery attests that she concluded plaintiff did not need a mental health referral and dental referral was not needed. Fluery attests that she reviewed the complaint and understands plaintiff is claiming he was denied medical treatment on June 23 and 24, 2005. Fluery attests that she did not work at the ECDC on June 23, 2004, or June 24, 2005, and did not receive any telephone calls from ECDC, and did not personally provide any medical treatment to plaintiff on those dates nor was she asked to do so. Fluery attached a copy of her time sheets to her affidavit.  (Fluery's affidavit).

Defendants submitted the affidavit of Terrie Shelton who attests that in June 2005, she was

employed as a nurse with Southeastern Services Group, Inc., which provides health care services to the inmates of the ECDC. Shelton attests that she has reviewed all plaintiff's medical records and is familiar with plaintiff as she has on occasion personally provided medical treatment to him. Shelton attests that while she worked with Southeastern, she worked at the ECDC part-time only up to twenty (20) hours per week but was on call 24 hours a day, 7 days a week and often received telephone calls from facility officers or staff who would advise her of an inmate's condition and answer her questions regarding the complaints if she was physically present at the ECDC. Shelton attests that if she determined on her nursing judgment that the situation was emergent she would advise the officer to have the inmate transferred to the local emergency room or she or Nurse Fluery would travel to the facility to evaluate the inmate. However, Shelton attests that if she decided the situation was non-emergent, she would provide the officer with instructions to care for the inmate. Shelton attests that when she presented plaintiff with a consent for routine services form on May 18, 2005, plaintiff refused to consent and sign the form. Shelton attests that she reviewed plaintiff's complaint wherein he complains that he was denied medical treatment on June 23 and 24, 2005. Shelton attests that she was contacted by phone twice on Thursday, June 23, 2005, by ECDC staff. She attests that she was contacted once at 9:30 a.m. and again at 12:00 p.m. Shelton attests that neither of these calls concerned plaintiff. Shelton attests that she was physically present at the ECDC on June 23, 2003, from 1:00 p.m. to 6:30 p.m. and was not advised during that time of any medical concern of plaintiff. Shelton attests that she did not work at ECDC on June 24 nor was she called by ECDC officials on that date. Shelton attests that she did not provide medical attention to plaintiff on June 23-24, 2005, nor was she asked to provide any medical attention on that date. Shelton also attached her time sheets to her affidavit.

Based on the evidence, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. First, the defendants did not give medical care to the plaintiff on that date nor were they

requested to do so. Plaintiff asserts that the officials instructed him that an unnamed nurse had given instruction on what he was to do for relief. Based on the medical records, there were no more complaints around that time frame with regard to stomach problems. The defendants submitted affidavits and time sheets showing the dates and times that they were at work and the fact that they did not receive any calls with regard to plaintiff on the alleged dates. Even assuming, *arguendo*, that they did give medical care or did not provide care upon being asked to do so, plaintiff has failed to show medical indifference. The plaintiff has not provided any medical evidence that indicates any lack of treatment caused him to suffer any life threatening medical problems. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, the undersigned recommends that defendants' motion for summary judgment be granted as it relates to the plaintiff's claims of medical indifference.

### III. CONCLUSION

Based on the above, the undersigned RECOMMENDS that defendants' motion for summary judgment (document # 112) be GRANTED.

Additionally, it is RECOMMENDED that all outstanding motions be deemed MOOT.

Respectfully submitted,


<u>s/Thomas E. Rogers, III          </u>
Thomas E. Rogers, III
United States Magistrate Judge


August <u>13</u>, 2007
Florence, South Carolina


**The parties' attention is directed to the important information on the attached notice.**