IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| STEVEN LEWIS BARNES, | ) | Civil Action No.  4:05-02073-MBS-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| A. DELL DOBY, SHERIFF; LT. POLLY | ) | |
| HALL; ELIJAH HARRIS; LT. KAREN | ) | |
| JAGGERS; NURSE KATHY FLUERY; | ) | |
| NURSE TERRY SHELTON; STAFF | ) | |
| WADE ROUSE; WAYNE ADAMS; | ) | |
| JOHN/JANE DOES OF THE FOOD | ) | |
| DEPARTMENT AT AIKEN | ) | |
| REGIONAL HOSPITAL; AND JOHN/ | ) | |
| JANE DOES, STAFF AT EDGEFIELD | ) | |
| COUNTY DETENTION CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Steven Lewis Barnes, filed this action under 42 U.S.C. § 1983[1] on July 28,

2005,  alleging that his constitutional rights were violated. On November 15, 2006, defendants

Adams, Doby, Hall, Harris, and Jaggers ("defendants") filed a motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure along with supporting memorandum,

exhibits, and affidavits. (Doc. #103). Because the plaintiff is proceeding pro se, he was advised on

or about November 16, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that

a failure to respond to the defendants' motion for summary judgment with additional evidence or

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of
28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive
motion, the report and recommendation is entered for review by the District Judge.

counter affidavits could result in dismissal of his complaint.   Plaintiff filed a response in opposition

on December 27, 2007, along with exhibits and affidavits. (Doc. #110).


## II.  DISCUSSION

### A. ARGUMENT OF THE PARTIES

Plaintiff alleges numerous violations. First, plaintiff alleges that he was denied access to

courts by not being given stamps. Plaintiff alleges that he had to sell his meal trays for stamps to mail

his legal mail. Plaintiff alleges that because he was not given stamps to mail his legal mail, one of

his cases was dismissed in Georgia. Second, plaintiff alleges that he was a pretrial detainee and was

punished because he was classified in maximum security and shackled to go to the recreation or

dayroom. Plaintiff asserts he was treated differently than other pretrial detainees because his case

was a "high profile case." Third, plaintiff alleges that his rights are violated due to inadequate food.

Plaintiff alleges that the food trays are unsanitary and are transferred out of Aiken Regional Hospital

to ECDC without protected "freezer raps, stacked on top of one another." Plaintiff alleges that the

food trays are placed in the refrigerator to thaw without protected covers, the food is not proper

nutrition,  sometimes the food is not completely cooked, the refrigerators are not cleaned out, that

plaintiff and other inmates have had "24 to 48 hour stomach sickness and stiff bowel movement or

diarrhea."  Fourth, plaintiff argues that he was denied basic hygiene because the ECDC attempted

to charge him for the indigent package which he refused to accept when he first arrived at ECDC.

Plaintiff alleges  he requested an indigent kit because he needed soap but refused the kit when he saw

what it contained because it was not worth five dollars. Plaintiff asserts he filed a grievance in the

matter.  Lastly, plaintiff alleges medical indifference asserting that he became very nauseated and

had stomach cramps after eating one of the food trays. Plaintiff alleges he informed staff and they stated they tried to contact the nurses but they did not work on the weekends, and would not pick up their phones or answer their pages. However, plaintiff alleges that the staff informed him that nurse "John Doe" said to get plenty of apple juice, do not eat dinner, drink lots of fluids and get plenty of rest. Plaintiff asserts that defendant Wade told plaintiff he would "bring plaintiff plenty of apple juice and try to drink plenty of water and hopefully one of the nurses will be in tomorrow" and if he "does not feel better later on in the afternoon before he leaves, to call back to the control booth and he'll bring plaintiff a sick call slip." (Complaint).  Plaintiff made no further allegations.

Defendants filed a motion for summary judgment asserting plaintiff's case should be dismissed. Defendants argue that plaintiff is not a pretrial detainee but a convicted inmate in that he is serving a life sentence in Georgia for kidnapping and other various offenses. Defendants assert that plaintiff is presently being held at the ECDC on charges of Capital Murder in which the death penalty is being sought. Plaintiff was booked into the ECDC on May 18, 2005, pursuant to the Interstate Agreement on Detainers.

Further, defendants argue the case should be dismissed due to Eleventh Amendment immunity, qualified  immunity, defendant Wayne Adams had no involvement with the plaintiff or the ECDC, plaintiff has failed to establish a claim for denial of his constitutional right of meaningful access to the courts, failed to establish a violation of his constitutional rights based on conditions of confinement, and is not entitled to supervisory liability.

## B.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Defendants failed to submit authority to support their position that plaintiff should be treated as a convicted inmate in this state based on his conviction in Georgia, the undersigned will address plaintiff's claims pursuant to the Fourteenth Amendment.  Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings

4

with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).  Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## C.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with

"specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## D. ANALYSIS

### DEFENDANT WAYNE ADAMS

Defendants argue any claims against defendant Wayne Adams, the County Administrator for Edgefield County, South Carolina, should fail as he has no control over the ECDC and has had no involvement with the plaintiff in regards to his allegations. Defendants submitted the affidavit of Wayne Adams who attests that as County Administrator he is effectively the Chief Executive Officer for Edgefield County. Adams attests that the ECDC is under the control and administration of the Sheriff and the County does not operate nor set the policies for the ECDC. Adams asserts that the Sheriff of Edgefield County is not a County employee but is an elected official pursuant to the laws

6

of the State of South Carolina. Adams attests that neither he nor any person under his control has had any personal involvement with the plaintiff regarding the allegations set forth in the plaintiff's complaint and that the plaintiff has not shown or alleged any acts or omissions on the part of defendant Adams.

Based on the fact that defendant Adams is the County Administrator having no control over the ECDC and has had no involvement with the plaintiff, it is recommended that defendants' summary judgment motion with regard to defendant Adams be granted and Adams dismissed from this action.

## DENIAL OF RIGHT OF ACCESS TO COURTS

As previously sated, plaintiff has alleged denial of access to the court by not having a law library at ECDC, delay in mailing out documents based on ECDC policy related to indigent kits and based on not being provided proper supplies.

Defendants argue that a local jail is not required to provide a law library, that the employees at ECDC have made every attempt to obtain requested legal materials for the plaintiff, including searching on the worldwide web gathering legal materials from free websites that provide access to legal materials. (See affidavit of Polly Hall). Furthermore, defendants assert that plaintiff has been represented by counsel for the entirety of his incarceration at the ECDC which negates a claim of inadequate access to courts. Hause v. Vaught, 993 F.2d 1079 (4th Cir. 1993). As to any claim with respect to a delay in his ability to mail ceratin documents, defendants assert plaintiff has failed to show any actual injury or adverse consequence resulting from these allegations.

Defendants submitted the affidavit of Polly Hall, Lieutenant and Administrator with the

ECDC. Hall attests that as Jail Administrator, she is charged with implementing and supervising the policies established by the Sheriff, and for the overall, day-to-day administration of the ECDC.  Hall attests that plaintiff did not inform the ECDC that he had a pending civil matter in Georgia Federal Court but only referred to his "case." Hall avers that it was assumed by the ECDC staff that plaintiff was referring to his pending criminal matter in South Carolina. Hall attests that although plaintiff would speak of his "case in Georgia" at times, he never explained it was a civil matter. Hall attests that until plaintiff's arrival, the ECDC had not had a situation where an indigent inmate came to the ECDC with pending civil matters that had to be dealt with. Hall attests that the ECDC provides for an indigent kit that each inmate can obtain by request every two weeks by maintaining a balance with the commissary of less that ninety-nine cents for two weeks and not have made any orders through the commissary at that time. Hall attests that the indigent kit contains a bar of soap, deodorant, tooth paste, a tooth brush, a comb, two stamped envelopes, four sheets of paper, and pencils. Plaintiff attests that the inmate can use these materials for any legitimate purpose he chooses. Hall attests that once an indigent kit is ordered, a five-dollar charge is placed against the inmate's commissary account, and that charge is paid down if the inmate receives any money while incarcerated. Hall avers that plaintiff refused the kit. However, Hall attests that once plaintiff informed the ECDC staff that he had a pending civil matter in Federal Court in Georgia, and that he wanted to commence a civil suit in South Carolina, plaintiff was provided with writing materials, envelopes, and stamps as needed and requested, to meet his needs regarding these legal matters.  (See exhibit F attached to Hall's affidavit revealing the amount of writing materials, envelopes, and stamps plaintiff received). Hall attests that the ECDC does not have a law library due to the limited resources, the small size, and the relatively short stay of most inmates at the ECDC. Hall states that the ECDC does have a

8

copy of the South Carolina Code, but no other laws books. Hall attests that once the ECDC was made aware of plaintiff's pending civil matters, she contacted the local magistrate in an effort to obtain legal materials for the plaintiff and also accessed several on-line databases that provided free legal materials in an effort to provide as much access to legal materials for the plaintiff as policies and time will allow. The plaintiff has failed to submit any objective evidence showing any actual injury arising out of the failure of these defendants to provide him with legal materials, supplies, or legal books. (Defendants attached a copy of the list of numerous supplies plaintiff had received).

Defendants also submitted the affidavit of Elijah Harris who attests that he is a Sergeant employed at the ECDC and is responsible for supervising the Correctional Officers at the ECDC. Harris attests that he is familiar with plaintiff's complaint in this matter and that plaintiff requested stamps and envelopes from Harris shortly after he arrived at ECDC. Harris attests that he informed plaintiff that he could purchase stamps and envelopes from the commissary or, if he did not have any money, he could request an indigent kit which contained envelopes, paper and pencils. Harris attests that plaintiff informed him that he did not want to pay for an indigent kit and asked Harris to remove the envelopes and stamps out of the kit and give them to plaintiff. Harris avers that he informed plaintiff he could not separate the envelopes and stamps from the indigent kit per policy of the ECDC and gave plaintiff a grievance form upon request.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. (Pink v. Lester, 52 F.3d 73 (4th Cir. 1995), "negligent denial of access to the courts is not actionable under § 1983." ) A prisoner must allege

adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.   White v. White, 886 F.2d 721 (4th Cir. 1989) and Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975 ) cert. denied, 424 U.S. 973 (1976).   Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S.343 (1996).

A review of the docket sheets shows plaintiff has filed over forty (40) motions and/or responses with the court in this case alone. A review of the docket sheet from his federal §1983 case in Georgia, 5:05-0490WTM-JEG, had numerous documents filed by plaintiff including objections to the report and recommendation and an appeal from the District Judge's decision to dismiss his case. The appeal was denied. Plaintiff has not provided any evidence from any case that the case was actually denied or dismissed for any reason attributed to the allegations he has made in this action. Although indigent inmates may not be denied reasonable amount of postage to mail legal mail, they do not have unlimited right to free postage in connection with right of access to court. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). To state a claim based on delay or nondelivery of legal mail, prisoner must allege an adverse consequence as a basis for the allegation that delay or nondelivery deprived him of meaningful access to courts. Id. In this case, plaintiff has failed to submit any objective evidence showing any actual injury arising from the allegations concerning denial of access to the courts. In plaintiff's response he asserts that his case on appeal was dismissed because he missed the deadlines. While it appears his case was dismissed from the appeal for filing the appeal after the deadline, the motion to file out of time was denied finding that the motion was not only untimely but was "frivolous and without merit." (Order of Chief Judge of the United States District Court Judge William T. Moore, Jr. Attached to plaintiff's response to defendants' reply).

Defendants attached a copy of the order of dismissal in the Georgia case and it reads as follows: "To the extent that plaintiff asserts that he has been denied access to the courts in the instant case, Plaintiff likewise is unable to show the likelihood of his success on the merits of this claims. Plaintiff has been able to file quite extensive documentation with this Court and there is no indication that plaintiff has missed any filing deadlines established by the Court in his pending action." Thus, plaintiff has failed to show any actual injury.

Furthermore, plaintiff has not alleged or shown that he was not represented by counsel for his pending criminal charges the entire time he was incarcerated at ECDC. A copy of the Policies and Procedures for access to courts and legal materials at the ECDC submitted by defendants with their memorandum states that "if an inmate is in pre-trial status, his court-appointed attorney or employed attorney shall be responsible for providing the inmate with all the legal materials he desires." In the case <u>Trotman v. York County Detention Center</u>, 2003 WL 23198860 (D.S.C.)), the Court held the following:

> Plaintiff's (a pretrial detainee) allegations relating to the lack of access to a comprehensive law library at the York County Detention Center do not raise a cognizable section 1983 claim. Longstanding case law in this circuit provides that if a pre-trial detainee has an attorney--or *is offered counsel but waives his or her right to counsel*--he or she has no constitutional right of access to a law library or to legal materials when he or she is a pre-trial detainee. *See United States v. Chatman,* 584 F.2d 1358, 1360 (4th Cir.1978). In *United States v. Chatman,* the Court concluded that *Bounds v.. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), was not applicable to a pre-trial detainee:
>
>> We do not read *Bounds* to support that conclusion. *Bounds* was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. * * * *Bounds,* of course, has no direct application to

11

defendant. He was accused of a crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read *Bounds* to give an option to the *prisoner* as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that *Bounds* has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered the defendant the assistance of counsel which he declined. We so hold. *Cf. United States v. West,* 557 F.2d 151 (8 Cir.1977).

*United States v. Chatman,* 584 F.2d at 1360 (italics in original). *Cf. Lewis v. Casey,* 64 U.S.L.W. 4587, 135 L.Ed.2d 606, 116 S.Ct. 2174 (1996).

The United States Court of Appeals for the Fourth Circuit has also ruled that the Constitution of the United States does not require every local jail to even have a law library. *See Magee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987). The holding in *Magee v. Waters* is based on the knowledge that county jails are generally short-term facilities, wherein " 'the brevity of confinement does not permit sufficient time for prisoners to petition the courts." ' *Magee v. Waters,* 810 F.2d at 452. *See also Cruz v. Hauck,* 515 F.2d 322, 331-333 (5th Cir.1975), *cert. denied, Andrade v. Hauck,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). In *Cruz v. Hauck,* the Court noted: "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of *the State."* 515 F.2d at 331 (emphasis added). Also on point are *Peterkin v. Jeffes,* 855 F.2d 1021, 1040-41 & nn. 24-25 (3d Cir.1988); and *Sands v. Lewis,* 886 F.2d 1166, 1170-71 (9th Cir.1989)(collecting cases). In any event, the obligation to provide legal assistance to Plaintiff rests with the State of South Carolina, *not* with the named Defendants in the above-captioned case.

Thus, plaintiff's claims as to any matters pertaining to his criminal charges are without merit because he was represented by counsel in his pending criminal case at the time of his incarceration at ECDC.   Additionally, plaintiff has failed to show any actual injury.

12

Based on the above, the undersigned finds that the plaintiff's constitutional rights have not been violated. Thus, the undersigned recommends that summary judgment be granted on this issue in favor of the defendants.

## CONDITIONS OF CONFINEMENT

Plaintiff has made numerous allegations concerning a violation of his constitutional rights based on the conditions of his confinement at the ECDC. Plaintiff alleges the food service is inadequate in that it is unsanitary and not nutritional, he was denied basic hygiene products, his rights were violated based on his classification and by the use of restraints anytime he is moved from his cell, and he was denied proper medical treatment for nausea and stomach cramps.

Defendants assert they are entitled to summary judgment as to the unsanitary food issues in that plaintiff has not shown that he suffered a serious or mental injury or that defendants acted with deliberate indifference. As to the allegations concerning the hygiene products, defendants assert the ECDC does not deny inmates access to basic hygiene supplies in that each inmate is given a welcome kit upon arrival and a two-dollar charge is placed against his commissary account to offset the costs of the supplies to the facility. If the inmate has a zero balance for a period of fourteen days, the inmate is considered indigent and may receive one indigent kit a week from the commissary and a five-dollar charge is placed against the inmate's commissary account. Thus, defendants argue they are entitled to summary judgment on this issue.

As to plaintiff's classification, defendants assert that because plaintiff is serving a life sentence for convictions in Georgia and is being held at the ECDC on pending charges for Capital Murder, plaintiff was classified to maximum security based on the ECDC classification procedure.

Defendants assert plaintiff has a history of violent acts, and has continually threatened staff and other inmates at the ECDC since his arrival. Therefore, for the safety and security of the staff and other inmates, plaintiff was classified as maximum and must be placed in restraints anytime he is moved from his cell. Defendants assert that the decision was based on valid penelogical reasons and objectives and enacted pursuant to the policies at the ECDC regarding the use of restraints. Further, defendants contend that as plaintiff indicated in his own complaint, the use of restraints on the plaintiff has not resulted in plaintiff being denied recreation, access to the dayrooms and television rooms or access to the showers.

As stated, confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16.   To prevail on a conditions of confinement claim, a  pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.  Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).  Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering.  Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995).  The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  However, due process also requires the State to provide pretrial detainees with some minimal level of food, living

14

space, and medical care, and "the failure to provide that level of necessities violates due process--even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. To survive summary judgment, the plaintiff must show more than de minimis pain or injury.

A review of the pleadings reveal plaintiff has failed to allege any significant injury resulting from the alleged conditions. As to the hygiene products, plaintiff admitted he requested and was provided an indigent kit but then refused it in that he did not think it was worth a charge of $5.00 on his commissary account. Defendants submitted the affidavit of Karen Jaggers, designated officer over Health and Safety at the ECDC who attests that each inmate is offered a welcome kit that contains a bar of soap, deodorant, tooth paste, a tooth brush, and a comb and a two-dollar charge is placed against the inmate's commissary account to offset the costs of the kit. Jaggers attests that even if the inmate has no money in his account he can still get a welcome kit, and if the inmate still has no money after two weeks or his account has a balance of less than ninety-nine cents, the inmate can obtain an indigent kit, which contains all of the items in a welcome kit plus two stamped envelopes, four sheets of paper, and pencils.

Plaintiff has not shown that he was deprived any "basic" need or was deliberately punished by the defendants. Plaintiff certainly had the option to obtain the hygiene items if he needed them

and there is no evidence that plaintiff was punished or singled out by having his account charged for the items if he did not have the money to purchase them. Thus, it is recommended that summary judgment be granted for defendants on this issue.

As to the allegations regarding the unsanitary food and the food service at the ECDC, the undersigned concludes plaintiff has not shown that he suffered any serous physical or emotional injury as a result of the food service or that there was express intent to punish. Defendants submitted the affidavit of Karen Jaggers who is employed with as a Lieutenant with the Edgefield County Sheriff's office, assigned to the ECDC. Jaggers attests that her official title is training officer and is the designated officer over Health and Safety at the ECDC. Jaggers avers that in February 2004, the ECDC began the process of obtaining a grant from the South Carolina Department of Corrections to renovate the ECDC facilities. Through this grant program, Jaggers attests that it was recommended that the ECDC get a certain oven made by Corter and Hoffman Corp., to be used to reheat frozen dinners that are served to the inmates at ECDC. Jaggers attests that the ECDC bought and refurbished a Corter and Hoffman oven in or around February 2005, pursuant to the grant from the SCDC and the recommendations received from the grant program. Jaggers asserts that the ECDC has a contractual relationship with Aramark, a company that specializes in pre-cooked and flash frozen meals that can be stored and reheated as needed, to provide all of the meals served at the ECDC to the inmates. Jaggers attests that this contract requires Aramark to provide nutritionally adequate meals to the ECDC's inmate population, as well as requiring Aramark to have a licensed dietician on staff to ensure that the meals provided are nutritionally adequate. ( Jaggers attached a copy of the Aramark contract). Jaggers asserts that the meals provided by Aramark to the ECDC are stored and served according to the specifications set forth by Aramak. However, Jaggers attests that

16

after getting the Corter and Hoffman oven, it was eventually brought to her attention through the "Sanitation and Food Safety Manual," provided by Aramark to the ECDC in August of 2005, that the Corter and Hoffmann oven was not able to re-therm the Aramark meals to the appropriate temperature in the appropriate amount of time explaining that the oven could reach the appropriate temperature but it took too long to do so. Jaggers attests that upon finding out the oven was not meeting the needs of the ECDC she began researching other vendors for an oven that could meet the needs. It was determined that the ECDC would have to special order a custom oven manufactured by a company called Crescor through a distributor called Allstate Restaurant Equipment, Inc. Jaggers attests that the oven was ordered in September 2005, after budgeting for the purchase.

Based on the evidence presented, the ECDC officials immediately began researching and budgeting for the procurement of an oven that would meet the needs of the ECDC once they were aware of the inabilities of the Corter and Hoffman oven. Therefore, even assuming *arguendo* that an issue of fact exists as to whether or not the food was cooked properly, plaintiff has failed to show that he suffered any significant injury or damage as a result. Plaintiff alleges he suffered with stomach cramps and nausea but no permanent damage or injury that did not subside without additional treatment. Thus, even if plaintiff did experience an injury, the injury was *de minimis*. Based on these reasons, it is recommended that defendants' motion as to this issue be granted.

As to plaintiff's allegations with regard to his classification and the use of restraints, it is recommended that summary judgment be granted. Defendants submitted the affidavit of Polly Hall, Jail Administrator, who attests that the ECDC has policies and Inmate Rules set by the Sheriff and the Rules are given to each inmate upon their arrival at ECDC. Hall avers that upon arrival at the ECDC, each inmate is classified into one of four security levels; maximum, medium, general

17

population, or minimum, with maximum being the most restrictive. Hall states that the inmate's history, past convictions, and current convictions are determining factors in the classification process. Hall attests that plaintiff is currently serving a life sentence for convictions he received in Georgia for various violent felonies he committed, is currently charged with Capital Murder in South Carolina, and is being held at the ECDC pending the disposition of those charges. Based on plaintiff's convictions, current charges, and ECDC polices and classification procedure, plaintiff was classified to the maximum security level.  Hall attests that based on plaintiff's history of violent behavior, current pending charges for violent acts, and numerous threats towards ECDC staff and other inmates, plaintiff is shackled anytime he is let outside of his cell to protect the health and safety of the ECDC staff members and other inmates housed at the ECDC. Defendants also submitted copies of several incident reports involving plaintiff.

First, absent a showing of expressed intent to punish on the part of correctional officials, determination whether particular condition or restriction is punishment generally turns on whether it is rationally connected to legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell v. Wolfish, supra. There has been no showing of an intent to punish plaintiff by placing him in maximum security or by placing shackles on his feet when he is moved from one area to the next. He is not denied the privileges of going to the dayroom, recreation or showers  but only complains that he is shackled. As stated above, defendants asserts that plaintiff was placed in maximum security and shackles are used based on the classification system at the ECDC. There is no liberty interest created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976) (transfer to higher security facility). A detainee does not have a protected interest in remaining in or being released into the general population. Reaffritt v. Nixon, 917 F.Supp. 409, 412 (E.D. Va. 1996).

18

Even though plaintiff has been shackled to move from place to place based on his security status and for penological interests, plaintiff has not been denied recreation or access to the dayrooms and television rooms, or the showers. Plaintiff does not allege that he has been injured in any way only that he is treated differently than other pretrial detainees. However, based on ECDC policy, plaintiff was placed in the maximum security level because of his current charges, his past conviction of violent acts, and the threats he had made since being at the ECDC for the safety of officers and other inmates. There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order. Bell, supra. n. 28. In the federal system, a detainee is committed to the detention facility only because no other less drastic means can reasonably assure his presence at trial. Id. *citing* 18 U.S.C. 3146. As a result, those who are detained prior to trial may in many cases be individuals who are charged with serious crimes or who have prior records. They also may pose a greater risk of escape than convicted inmates. Id.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previous discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including the maintenance of order and discipline within the prison, the prevention of escapes and, to the extent possible, the rehabilitation of the inmates. These complex responsibilities are "not readily susceptible of

resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

Plaintiff's allegations of medical indifference must fail as plaintiff has not shown any deliberate indifference on the part of these defendants or any serious or significant injury. Plaintiff alleges that he suffered with nausea, stomach cramps and bowel trouble on June 23 and 24 for which there were no nurses to treat his symptoms. However, as plaintiff states in his complaint, when he notified the ECDC staff of his complaints, they attempted to contact the nurses and told plaintiff the nurses were not in on that weekend. However, plaintiff in his own complaint alleges that the officials at ECDC instructed plaintiff on what a nurse had said to do and they commenced this treatment of apple juice and plenty of liquids.  Specifically, plaintiff alleges that the staff informed him that nurse "John Doe" said to get plenty of apple juice, do not eat dinner, drink lots of fluids and get plenty of rest. Plaintiff asserts that defendant Wade told plaintiff he would "bring plaintiff plenty of apple juice and try to drink plenty of water and hopefully one of the nurses will be in tomorrow" and if he "does not feel better later on in the afternoon before he leaves, to call back to the control booth and he'll bring plaintiff a sick call slip." (Complaint). As set forth in Hall's affidavit, the officials are directed to contact the Southeastern Service Group nurse with whom the ECDC has a contractual relationship regarding any complaints from inmates requiring medical services. However, if the inmate presented to staff with a life threatening or serious medical problem, the staff person is trained to take the inmate to the hospital. As plaintiff has asserted in his complaint, the ECDC staff notified medical of plaintiff's complaints and relied upon medical to make an appropriate determination.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth

Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of

pain," <u>Id</u>., quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical
> needs; if the authorities fail to do so, those needs will not be
> met. . . .  We therefore conclude that deliberate indifference
> to serious medical needs of a prisoner constitutes the
> "unnecessary and wanton infliction of pain," <u>Gregg v.
> Georgia</u>, supra, at 173, (joint opinion), proscribed by the
> Eighth Amendment.  This is true whether the indifference is
> manifested by prison doctors in their response to the
> prisoner's needs or by prison guards in intentionally denying
> or delaying access to medical care or intentionally interfering
> with the treatment once prescribed.  Regardless of how
> evidenced, deliberate indifference to a prisoner's serious
> illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not
> state a valid claim of medical mistreatment under the
> Eighth Amendment.  Medical malpractice does not
> become a constitutional violation merely because the
> victim is a prisoner.  In order to state a cognizable
> claim, a prisoner must allege acts or omissions
> sufficiently harmful to evidence deliberate
> indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

<u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).  In that case, the Court noted that treatment "must

21

be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart

v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendants for medical indifference. As set out above, plaintiff alleges that he experienced nausea and stomach cramps after eating his meal and experienced symptoms of dehydration including sweating and diarrhea until the next morning. On June 24, 2005, plaintiff alleges he soiled his clothes due to an inability to timely reach the toilet and, while on the toilet, notified the ECDC officials that he needed to see a doctor immediately. Plaintiff alleges he was advised that the nurses did not work on the weekends and were not answering their pages nor phones. Plaintiff asserts he was advised about one hour later that the nurses would not be coming to work that day but then alleges that an unidentified nurse provided instructions to staff to care for plaintiff's complaints with plenty of liquids, apple juice, plenty of rest, and to avoid eating dinner on that date. The detention officials notified plaintiff if he had

anymore problems he would receive a medical call slip. There were no allegations that the symptoms continued or resulted in damage to the plaintiff.

Based on the evidence, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. Even assuming, *arguendo*, that there was some deliberate indifference on the part of the defendants, the plaintiff has not provided any medical evidence that indicates any lack of treatment caused him to suffer any life threatening medical problems. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.

## ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

Section 1983 provides a federal forum to remedy

> many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under  § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state.  State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the ECDC and, thus, state officials acting in their official capacity while employed by the ECDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

## QUALIFIED IMMUNITY

Defendants assert even if the Court concludes that the facts of the case are sufficient to establish a constitutional claim under any of the plaintiff's causes of action, dismissal of all claims is appropriate based upon the qualified immunity of the defendant. Defendants contend that he is entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive

25

discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendant argues that he is entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1985).

In <u>Torchinsky v. Siwinski</u>, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals

explained the rationale for <u>Harlow</u> qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

<u>Torchinsky</u>, 942 F.2d at 260-261. (Citations Omitted).

The <u>Torchinsky</u> court further noted that "a particularly appropriate procedure for determining

an official's entitlement to qualified immunity is summary judgment."  The <u>Torchinsky</u> court held

that an official's entitlement to qualified immunity is based upon an "objective reasonableness"

standard. "The very idea of reasonableness requires that courts accord interpretive latitude to

officials judgments." <u>Torchinsky</u>, 942 F. 2d at 261, citing <u>Sevigny v. Dicksey</u>, 846 F. 2d 953 (4th

Cir.1988).  Therefore, a plaintiff may prove that his rights have been violated, but the official is still

entitled to qualified immunity if a reasonable person in the "official's position could have failed to

appreciate that his conduct would violate" those rights. <u>Torchinsky</u>, 942 F. 2d at 261, citing

<u>Collinson v. Gott</u>, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of

<u>Swanson v. Powers</u>, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly

recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F.

2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the

defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating

that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals

further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendant  (i) violated a particular right clearly

established in law, and (ii) the application of that right to the actions of the official must be apparent.

The plaintiff in this case has not done so. The undersigned cannot conclude that the defendant in this

case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello,

supra.  Therefore, the undersigned recommends that the motion for summary judgment filed by the

defendants be granted on the basis of qualified immunity.


**SUPERVISORY LIABILITY**

Defendants assert that are entitled to summary judgment in that plaintiff cannot maintain an

action against them based on a theory of supervisory liability.

There are three elements necessary to establish supervisory liability under §1983: (1) that the

supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that

posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2)

that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. *citing* Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. Causation is established when the plaintiff demonstrates and affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff. Id. Plaintiff has failed to meet this burden in that he has failed to establish a constitutional violation. Thus, it is recommended that summary judgment be granted for defendants on the theory of supervisory liability.

### III.  CONCLUSION

Based on the above, the undersigned RECOMMENDS that defendants' motion for summary judgment (document # 103) be GRANTED.

Additionally, it is RECOMMENDED that all outstanding motions be deemed MOOT.

29

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


August 13, 2007
Florence, South Carolina


**The parties' attention is directed to the important information on the attached notice.**